**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Melissa G.L.[1],<br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br>Defendant. | Civil No. 25-1214 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") denial of her application for Social Security Disability Insurance ("SSDI") benefits. Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 9. The Commissioner opposed. Docket No. 13. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 7. After careful review of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **REVERSED** and the case is **REMANDED** for further administrative proceedings consistent with the Court's opinion.

## I. Procedural Background

Plaintiff worked as a salesperson, leasing agent and apartment complex administrator until 2020. Tr. 41, 186, 383.[2] On October 28, 2022, Plaintiff filed an application for SSDI claiming that, as of April 3, 2020, the following conditions limited her ability to work: Fibromyalgia, panic attacks and depression, Raynauds Disease, cervical spondylosis, and degenerative disc disease. Tr. 28, 189, 191. Plaintiff received treatment from several doctors as evidenced by her disability report. The application was denied initially and upon reconsideration. Tr. 184-192. Plaintiff

[1] Plaintiff's last name is omitted for privacy reasons.

[2] "Tr." refers to the transcript of the record of proceedings.

requested a hearing before an Administrative Law Judge ("ALJ") and, on February 8, 2024, a hearing was held via telephone before ALJ Gerardo Picó. Tr. 38-51. Plaintiff testified and was represented by counsel. Id. Vocational Expert ("VE") Joey Kilpatrick testified at the hearing. Id. On February 29, 2024, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of April 3, 2020, through the date of the decision. Tr. 31. Plaintiff asked the Appeals Council to review, but the request was denied on February 13, 2025, rendering the Commissioner's decision the final decision for review by this Court. Tr. 1-5. On April 14, 2025, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 9, 13.

## II. Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment," which the Commissioner acknowledges are so severe as to

preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment," the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment," the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

**B. Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla." It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high[.]" Biestek v. Berryhill, 587 U.S. 97, 103-04 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence.

Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). As such, the Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir.1987).

## III. Discussion

### A. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 3, 2020, the alleged onset of disability. Tr. 24. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): fibromyalgia and degenerative disc disease. Id. The ALJ found that Plaintiff's depressive disorder and anxiety disorder were non-severe impairments under 20 C.F.R. § 404.1520a(d)(1) after considering four broad areas of mental functioning, known as the "paragraph B criteria:" (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves (Tr. 24-26). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The decision of the ALJ was based on his conclusion that Plaintiff's medically determinable mental impairments caused no more than mild limitations in her ability to perform basic work activities. Tr. 26.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 26. The ALJ proceeded to determine Plaintiff's RFC. Tr. 27. The ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), except:

> Lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for six hours and stand and walk for six hours in an eight-hours workday. She can frequently climb ramps and stairs, balance, kneel, crouch and crawl, and can occasionally climb ladders and stoop. She can perform tasks that frequently require overhead reaching, handling, and fingering.

Tr. 27. The ALJ then concluded that Plaintiff could perform past relevant work as a sales representative of communication equipment and as a residence leasing agent. Tr. 30-31. The ALJ found that Plaintiff was not disabled. Tr. 31.

**B. Plaintiff's Allegations of Error**

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) the ALJ improperly assessed Plaintiff's mental impairments, (2) the ALJ's evaluation of Plaintiff's fibromyalgia was incorrect and failed to comply with Social Security Regulation ("SSR") 12-2p, (3) the ALJ improperly evaluated the opinion of Dr. Rodríguez, and (4) the ALJ improperly considered Plaintiff's symptoms.

**1. The ALJ's Step Two Findings**

Plaintiff argues that the ALJ erred at step two by finding Plaintiff's depression and anxiety non-severe despite evidence of significant limitations, including reports of auditory and olfactory hallucinations, paranoid ideation, and a diagnosis of major depressive disorder, single episode severe, with psychotic features. The Commissioner contends that the ALJ's findings rest on substantial evidence, including mental status examinations documenting logical thought process, intact memory, appropriate judgment, and the absence of hallucinations on most visits, as well as a largely unremarkable consultative psychological examination.

The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald, 795 F.2d at 1124. An impairment is considered non-severe when the medical evidence establishes that it constitutes only a slight abnormality that has no more than a minimal impact on the claimant's ability to perform work, regardless of age, education, or work experience. González García v. Secretary of Health & Human Services, 835 F.2d 1, 2 (1st Cir. 1987) (citing McDonald, 795 F.2d at 1124). An ALJ's determination that a claimant's impairment is non-severe must be supported by substantial evidence, and the ALJ must articulate the rationale underlying that determination. Charpentier v. Colvin, 2014 WL 575724, at *12 (D.R.I. Feb. 11, 2014) (citing omitted).

The record here contains evidence supporting both Plaintiff's allegations as to the severity of her mental impairment, and the ALJ's finding that those impairments were not severe. Dr. Ortiz, Plaintiff's treating psychiatrist, documented sad and anxious mood on numerous occasions, as well as instances of olfactory hallucinations, and diagnosed Plaintiff with major depressive disorder, single episode, severe with psychotic features. Tr. 25, 682-685, 712-714. Dr. Barbosa, the

consultative psychologist, also documented Plaintiff's reports of daily olfactory and auditory hallucinations, paranoid delusions, and anxiety during the November 12, 2022, consultative examination. Tr. 652. On the other hand, the longitudinal treatment records contain significant findings weighing against a determination that Plaintiff's depression and anxiety imposed more than minimal functional limitations. Dr. Ortiz's examinations consistently documented appropriate orientation, logical and coherent thought process, good memory, appropriate judgment, and adequate impulse control. Tr. 25, 682-685, 712-714. Although Dr. Barbosa noted Plaintiff's reports of hallucinations and paranoid ideation, the examination also described Plaintiff as cooperative, euthymic, of average intellectual functioning, with good-term memory and organized thought. Tr. 652. Moreover, Dr. Ortiz's subsequent treatment records do not reflect ongoing auditory or olfactory hallucinations, and the November 6, 2023, notes expressly reflect no delirium or auditory or olfactory hallucinations. Tr. 712-714.

The record therefore does not establish a uniformly benign or uniformly disabling pattern of mental symptoms. Rather, it contains evidence of genuine mental-health impairments, including significant symptoms documented at certain points in the treatment record, alongside repeated clinical findings suggesting relatively preserved cognitive and behavioral functioning. The question is then whether considering this evidence the ALJ's determination that Plaintiff's depression and anxiety did not satisfy the *de minimis* severity threshold is supported by substantial evidence.

To be sure, resolving evidentiary conflicts and determining the significance and weight of competing medical findings are functions reserved for the ALJ, not the reviewing court. See Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723, at *1 (D.P.R. Sept. 23, 2021) (recognizing that the ALJ is responsible for drawing inferences from the record and resolving conflicts in the evidence, and that a reviewing court must affirm when the decision is supported by substantial evidence, "even if the record arguably could justify a different conclusion") (citation and quotation omitted). Although the record contains evidence of significant psychiatric symptoms that could support a finding of greater severity, the ALJ could consider that evidence in conjunction with the longitudinal treatment record, which documented preserved orientation, memory, thought processes, judgment, and impulse control and did not consistently document hallucinations. On this record, the evidence relied upon by the ALJ provides a reasonable evidentiary basis for concluding that Plaintiff's depression and anxiety caused no more than minimal limitations.

Accordingly, the ALJ's step two determination is supported by substantial evidence and should not be disturbed.

**2. The ALJ's Evaluation of Plaintiff's Fibromyalgia under SSR 12-2p**

Plaintiff argues that the ALJ required objective evidence of fibromyalgia, which is a condition that, by its nature, is not readily established through conventional objective testing. And that this was contrary to SSR 12-2p. The Commissioner contends that objective medical evidence remains relevant to the assessment of the functional effects of fibromyalgia once the condition has been established as a medically determinable impairment, and that the ALJ could consider the objective findings in evaluating Plaintiff's alleged limitations.

Fibromyalgia is a syndrome characterized by "widespread pain in the joints, muscles, tendons, or nearby soft tissues" "accompanied by stiffness and fatigue due to sleep disturbances." SSR 12-2p, 2012 WL 3104869, at *2; Lawson v. Astrue, 695 F. Supp. 2d 729, 744 (S.D. Ohio 2010) (quoting Preston v. Secretary of Health and Human Services, 854 F.2d 815, 817-820 (6th Cir. 1988). Despite the presence of chronic pain, individuals with fibromyalgia generally have normal musculoskeletal and neurological examinations and no laboratory abnormalities. Johnson v. Astrue, 597 F.3d 409, 410 (1st Cir. 2009) (citing Harrison's Principles of Internal Medicine, at 2056 (16th ed. 2005)). For this reason, SSR 12-2p has established diagnostic criteria for the condition. These include widespread pain affecting both sides of the body, both above and below the waist, as well as tenderness at a minimum of 11 of 18 designated points, and repeated manifestations of fatigue, depression, or anxiety disorder. SSR 12-2p, 2012 WL 3104869, at *2-3; Preston, 854 F.2d at 818 ("There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients.").

The Court does not read SSR 12-2p to prohibit consideration of objective or clinical findings when assessing the functional effects of fibromyalgia. Rather, the Ruling recognizes the particularities of the impairment and cautions against treating the absence of traditional objective abnormalities as dispositive of a claimant's allegations. To this end, because fibromyalgia may produce significant pain and functional limitations despite normal muscle strength, range of motion, imaging and laboratory findings, as well as no joint swelling, such findings alone may have limited probative value in assessing the severity of the impairment. See Johnson, 597 F.3d at 412; Lawson, 695 F. Supp. 2d at 744 (citations omitted). As such, even though an ALJ may

consider normal objective findings in assessing limitations posed by fibromyalgia, those findings are not a substitute for the diagnostic criteria relevant to fibromyalgia and the claimant's reported symptoms. See Small v. Astrue, 840 F. Supp. 2d 458, 464 (D. Mass. 2012) ("Given fibromyalgia's nature, weight must be given to subjective, as well as objective, determinations."); Lawson, 695 F. Supp. 2d at 737 ("Fibromyalgia, like other chronic conditions, is likely to cause different magnitudes of symptoms over time […] And the fact that her subjective complaints do not correlate with the objective medical findings is the hallmark of a fibromyalgia diagnosis") (citation omitted).

The ALJ relied on negative clinical findings— denial of joint swelling, negative straight-leg raising, normal range of motion, absence of tenderness at all extremities, and absence of numbness or weakness— to discount the degree of limitation alleged by Plaintiff and her treating physician. Tr. 28. But, as discussed above, such findings are not necessarily inconsistent with disabling fibromyalgia. As courts have recognized, patients with fibromyalgia may report persistent and severe pain despite physical examinations that reveal normal range of motion, muscle strength, and neurological responses and no joint swelling. Preston, 854 F.2d at 817-18. Thus, the absence of swollen joints or other orthopedic or neurological abnormalities does not demonstrate that fibromyalgia is non-disabling. Green-Younger v. Barnhart, 335 F.3d 99, 109 (2nd Cir. 2003) ("the absence of swelling joints or other orthopedic and neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.") (citation and quotations omitted and cleaned up). Rather, these normal or negative findings are consistent with the nature of fibromyalgia and may serve primarily to exclude "other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." Id. (quoting Preston, 854 F.2d at 819).

Moreover, the decision of the ALJ does not adequately address contrary clinical findings that bear directly on the fibromyalgia diagnosis and its functional effects. The record includes findings of generalized pain, pain in all eighteen out of eighteen tender points and tenderness in extremities during rheumatological and neurological examinations, and diffuse tenderness to palpation across nearly every major muscle group. Tr. 469, 472, 488-571, 690, 703, 706, 725, 671. Even though the ALJ could weigh conflicting evidence, including clinical and objective findings, in assessing the functional effects of a medically determinable impairment, (20 C.F.R. §

404.1529(c)(3); Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987)), the ALJ had to evaluate the evidence as a whole and could not selectively rely on findings that support an adverse conclusion while overlooking contrary evidence. The ALJ's decision emphasizes findings such as normal strength, range of motion, and absence of swelling, but gives little apparent weight to the documented tender-point and diffuse-tenderness findings that are particularly relevant to a condition such as fibromyalgia. See Johnson, 597 F.3d at 412-13 (recognizing the limited value of conventional objective findings in evaluating fibromyalgia); Lawson, 695 F. Supp. 2d at 736-37 (finding point tenderness supporting the existence and severity of fibromyalgia even when claimant presents no swelling and normal range of motion); Green-Younger, 335 F.3d at 106-07 (holding that the ALJ improperly rejected the treating physician's RFC opinion based on the purported lack of "objective" medical evidence, notwithstanding the documented presence of trigger points).

On this record, the Court cannot conclude that the ALJ's assessment of Plaintiff's fibromyalgia-related limitations is supported by substantial evidence. The ALJ could consider normal strength, range of motion, and the absence of joint swelling, but those findings alone do not adequately address the severity of fibromyalgia or the functional limitations it may produce. The decision gives substantial weight to these conventional negative findings while failing to meaningfully account for the documented tender-point and diffuse-tenderness findings and Plaintiff's reported symptoms. Considering the nature of fibromyalgia and the limited probative value of traditional objective findings in evaluating that impairment, the RFC determination is not adequately supported by the record. Remand is warranted for the ALJ to reassess Plaintiff's fibromyalgia-related functional limitations in accordance with SSR 12-2p.

**3. The ALJ's Evaluation of Dr. Rodríguez's Medical Opinion**

Plaintiff argues that the ALJ failed to adequately articulate the supportability and consistency of Dr. Rodríguez's medical opinion, as required by 20 C.F.R. § 404.1520c. The Commissioner contends that the ALJ cited specific treatments notes reflecting largely unremarkable findings that were inconsistent with the limitations Dr. Rodríguez assessed.

Under 20 C.F.R. § 404.1520c(b)(2), the ALJ must explain how he considered the supportability and consistency of a medical opinion. Supportability can be described as follows: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Consistency can be described as follows: "[t]he more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." 20 C.F.R. § 416.920c(c)(2). The regulations do not require the ALJ to use "supportability" and "consistency" as magic words so long as the reasoning is discernible. Darling v. Kijakazi, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023); Shiebler v. O'Malley, 761 F. Supp. 3d 235, 248 (D. Mass. 2024).

The ALJ found Dr. Rodríguez's opinion "less persuasive" because "the record and her own clinical findings do not support the limitations she attempts to portray." Tr. 29. This explanation addresses supportability, at least to some extent, because the ALJ identified Dr. Rodríguez's own clinical findings as a basis for discounting her opinion. However, the explanation is insufficient to demonstrate that the ALJ adequately considered consistency in the context of Plaintiff's fibromyalgia. As discussed above, fibromyalgia presents a particular evidentiary circumstance: individuals with the condition may experience significant pain and functional limitations despite normal musculoskeletal and neurological examinations and an absence of laboratory abnormalities. Preston, 854 F.2d at 820. Thus, while an ALJ may consider normal or unremarkable clinical findings, those findings do not necessarily undermine allegations of limitations caused by fibromyalgia. Rather, the ALJ must consider clinical evidence that is relevant to the condition, including evidence of widespread pain and tenderness and the presence of positive tender points.

The ALJ did not do so here. In discounting Dr. Rodríguez's opinion, the ALJ relied on largely unremarkable clinical findings but did not meaningfully address contrary findings that bear directly on Plaintiff's fibromyalgia. As discussed above, the record includes findings of pain in eighteen out of eighteen positive tender points and diffuse tenderness to palpation across nearly every major muscle group. These are not mere inconsistent findings that the ALJ was free to overlook. These are clinical findings directly relevant to the diagnosis and functional effects of fibromyalgia. Yet the ALJ did not explain why these findings were inconsistent with the limitations Dr. Rodríguez assessed, thus failing to properly consider the "consistency" of that medical opinion.

The ALJ's consideration of Dr. Blas Boria's findings is particularly significant. Dr. Blas Boria's examination documented "remarkable" generalized give-away weakness attributed to pain, along with diffuse tenderness to palpitation "all over her body involving joints, muscles, and back." Tr. 672. However, in addressing these findings, the ALJ discounted the diffuse tenderness

and give-way weakness without explaining their significance or why these were inconsistent with Dr. Rodríguez's assessment. Tr. 29. Nor did the ALJ explain how these findings should be weighed against the normal findings on which the ALJ relied. The ALJ thus effectively emphasized the absence of traditional objective abnormalities without adequately accounting for clinical findings that are relevant to the diagnosis and functional effects of fibromyalgia. The ALJ likewise did not adequately explain why Dr. Rodríguez's opinion was inconsistent with the opinions of the non-examining state agency physicians. The ALJ stated only that "[a]lthough they did not have the benefit to review the entire record, their assessments and opinions are generally consistent with the preponderance of the evidence of the record that support the residual functional capacity to perform light work." Tr. 30. But the ALJ did not identify the evidence supporting that conclusion or explain how the state agency physicians' opinions were inconsistent with, or otherwise undermined, Dr. Rodríguez's assessment in light of the positive clinical findings documented in the record. The ALJ's explanation therefore does not allow the Court to determine why Dr. Rodríguez's opinion was discounted in favor of the state agency physicians' assessments. On remand, the ALJ should reevaluate Dr. Rodríguez's opinion and explicitly address both supportability and consistency, including the corroborating and conflicting evidence identified above.

**4. Subjective Symptoms**

Plaintiff argues that the ALJ's assessment of her subjective complaints rests on a selective and mischaracterized account of her daily activities in violation of SSRP 16-3p. The Commissioner contends that the ALJ properly weighed Plaintiff's subjective complaints against the record. Under the SSR 16-3p, the ALJ must evaluate the intensity, persistence, and limiting effects of subjective symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 416.929(c)(4); SSR 16-3p, 2017 WL 5180304, at *7. Because symptoms may be more severe than can be shown by objective medical evidence alone, the regulations require consideration of six factors, commonly referred to as the "Avery factors:" (1) the nature, location, onset, duration, frequency, radiation, and intensity of the pain; (2) factors that precipitate or aggravate the pain, including movement, activity, or environmental conditions; (3) the type, dosage, effectiveness, and side effects of pain medication; (4) treatments other than medication to alleviate pain; (5) functional restrictions; and (6) the claimant's daily activities. Id. § 404.1529(c)(3); Avery v. Secretary of Health & Human Services, 797 F.2d 19, 28 (1st Cir. 1986). Minimal daily activities without more

are not comparable to the sustained demands of full-time competitive work, and an ALJ's reliance on such activities as a basis for discounting otherwise credible allegations of disabling symptoms requires the ALJ to account for any qualifications the claimant places on her ability to perform them. Lawson, 695 F. Supp. 2d at 737-38 (ALJ improperly relied on claimant's ability to perform modest daily activities without accounting for the limited and qualified nature of that activity).

The ALJ acknowledged Plaintiff's testimony that her ability to drive was limited because she needed to stop and stretch during a thirty-minute drive due to pain and that her daily routine included only one hour of sleep. Tr. 28. The record also reflects that Plaintiff required assistance with cooking and basic household chores such as sweeping because of pain. Tr. 45. Nevertheless, the ALJ concluded that Plaintiff's daily activities, "along with the objective medical evidence," demonstrated a greater sustained capacity than she alleged. Tr. 30.

The Court need not separately determine at this stage whether the ALJ properly evaluated Plaintiff's subjective symptoms. The ALJ's assessment of those symptoms was based in part on the same objective findings that, as discussed above, do not adequately support the ALJ's assessment of Plaintiff's fibromyalgia-related limitations. Because the ALJ must reconsider the evidence concerning the nature and functional effects of Plaintiff's fibromyalgia, that reassessment may materially affect the evaluation of her reported symptoms and the resulting RFC. The Court therefore declines to evaluate the adequacy of the ALJ's subjective-symptom analysis on the present record. On remand, the ALJ should reevaluate Plaintiff's reported symptoms, including the qualified nature of her daily activities, her documented medication side effects, and the clinical evidence concerning the functional effects of fibromyalgia.

## IV. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further administrative action consistent with this opinion.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of September 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge